WILLIAM LEBEAU, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARION LEBEAU, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lebeau v. Commissioner
Docket Nos. 7398-78, 8182-78.
United States Tax Court
T.C. Memo 1980-201; 1980 Tax Ct. Memo LEXIS 385; 40 T.C.M. (CCH) 461; T.C.M. (RIA) 80201; June 12, 1980, Filed Maurice A. Nernberg, Jr., for petitioner Robert F. Wagner and Henry E. Rea, Jr., for petitioner Edward F. Peduzzi, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes for 1975 as follows: William Lebeau
$9,706.48
Marion Lebeau
$4,093.30
The deficiency determinations are alternative in the sense that petitioner William Lebeau (William) has claimed deductions under section 215 [1]/ for sums made available to his former wife, petitioner Marion Lebeau (Marion), and she did not report those sums as income under section 71(a). If Marion is taxable on such sums, corresponding amounts are deductible by William. Concessions having been made, the issues remaining for decision are: 1. Whether certain payments made by William to or on behalf of Marion are includable in her income under section 71(a) and deductible by *387 William under section 215. 2. Whether rental receipts generated by property held by petitioners as tenants in the entirety are includable in Marion's income and deductible by William. FINDINGS OF FACT Some of the facts have been stipulated. At the time of filing their petitions, William resided in Waco, Texas, and Marion resided in Pittsburgh, Pennsylvania. William filed with the Internal Revenue Service Center, Philadelphia, Pennsylvania, his 1975 Federal income tax return claiming the status of "married filing separately." Marion did not file an individual return for 1975. William and Marion were married on December 28, 1947. During their marriage, they had one daughter and one son. They separated in May 1972. On October 11, 1972, William initated an action for divorce. On December 10, 1973, Marion instituted an action requesting support for herself and their minor daughter. A hearing was held on February 19, 1974, before the Family Division of the Court of Common Pleas of Allegheny County, Pennsylvania (sometimes hereinafter the court). During that hearing, counsel for William and Marion read into the official court transcript an agreement stating that William *388 would pay $1,224 per month to Marion. This sum was the difference between the $555 she was collecting as rents from an apartment house held by them as tenants by the entireties and the amount she requested in her petition. This agreement was not in writing except as it appeared in the court transcript. Subsequently, William became delinequent in making payments under the agreement, and Marion instituted an action in the Allegheny County Court of Common Pleas by filing a "Petition to Enforce Support Agreement." The petition recounted the February 19, 1974, proceeding, alleging that William and Marion had agreed on a settlement in open court and that "such agreement is a matter of record in this Court." The petition further alleged: That the settlement made between the parties hereto provided, inter alia, that defendant would pay to the plaintiff, as support for his wife and minor child, the sum of One Thousand Two Hundred Twenty-four ($1,224.00) Dollars per month, commencing as of February 20, 1974. The petition further alleged that William was indebted to Marion in the amount of $4,896: On July 30, 1974, the court entered an order, returnable August 13, 1974, stating, in *389 part, that-- a rule is hereby granted on the defendant to show cause why the terms of the settlement agreement should not be enforced and judgment entered against defendant in the sum of Four Thousand Eight Hundred Ninety-six ($4,896.00) Dollars. On September 30, 1974, the court entered an order for support "based upon the hearing and agreement made in open court" on February 19, 1974. Commencing September 21, 1974, William was required by this order to pay $1,224 per month to Marion and their daughter, Carolyn. The order also required William to pay certain arrearages and real estate taxes. The order further stated: 4. The defendant shall be responsible for and shall pay all medical expenses incurred by the plaintiff or by their daughter, Carolyn Lebeau. The plaintiff is specifically directed to cooperate with the defendant in filing any insurance claims which may be available for reimbursement of such medical expenses. On July 15, 1975, the court amended the September 30, 1974, order reducing the support payment from $1,224 to $900 per month for the months June, July, and August 1975. This amending order recites: These support payments are for the sole benefit of *390 Marion B. Lebeau since their daughter, Carolyn Lebeau, is no longer a resident at the home at 6306 Beacon Street, Pittsburgh, Pennsylvania 15217. The court further amended the order on April 21, 1976, requiring William to pay the 1974 and 1975 real estate taxes on Marion's residence. On October 19, 1976, the court entered a "Final Order" which amended the 1974 order to permit Marion to retain the rents from the apartment house and to require William to pay $900 per month as sole support payments, stating in part: IT IS HEREBY ORDERED AND DECREEED that paragraph one of the 1974 support order is, in order to reflect the parties' previous agreement as outlined on Page 2 of the February 19, 1974, transcript and which this court views as equitable, hereby amended to provide that William Lebeau shall, in addition to permitting Marion B. Lebeau to receive and keep for her own use the net rentals from the parties' apartment house located at 5817 Darlington Road, pay to Marion B. Lebeau the sum of $900 per month for her sole support and that said payments shall be due on the 21st day of each month, commencing September 21, 1975. The court vacated this order on October 27, 1976, and *391 entered an order standing in lieu thereof requiring, in addition to the requirements of the October 19, 1976, order, that Marion pay all related apartment house operating expense, including taxes. The order is as follows: AND NOW, to-wit, this 27th day of October, 1976, in order to consolidate and clarify the foregoing orders pertaining to the instant litigation, IT IS HEREBY ORDERED and DECREED that this court's order dated October 19, 1976 is vacated, and, in lieu thereof, IT IS ORDERED, ADJUDGED and DECREED, after hearing and upon due consideration of the previous proceedings and testimony relating to this litigation, that William Lebeau shall permit Marion B. Lebeau to collect the rentals from the parties' apartment house located at 5817 Darlington Road, and Marion B. Lebeau shall pay all related apartment house operating expenses, including taxes therefrom, after which Marion B. Lebeau shall retain the net rental income, if any, from the said apartment house for her own use, and, in addition thereto, William Lebeau shall pay to Marion B. Lebeau the sum of $900.00 per month for her sole support and that said payments shall be due on the 21st day of each month, commencing September 21, 1975. *392 On February 7, 1977, the court entered an order vacating and terminating the order of support. In 1975, William made seven cash payments to Marion in the total amount of $9,240 pursuant to the support order. He also paid medical expenses of $2,096 for Marion, and $320 for medical insurance on behalf of Marion during 1975. William was reimbursed $1,200 pursuant to the insurance plan for Marion's medical expenses. Marion received $6,400 as rental income from the apartment house during 1975, none of which was reported as income by her. William reported as income in 1975 gross rents of $6,980. He paid $3,048.95 for maintenance and upkeep of the apartment house during 1975. Marion alleges in her petition that none of the payments constitute alimony or separate maintenance payments and thus are not includable in income under section 71. William, to the contrary, alleges that all of the payments constitute support and thus are deductible by him under section 215. OPINION Issue 1. Cash Payments
Section 71(a) provides in pertinent part: (3) Decree for support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or *393 not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. During 1975, William made periodic cash payments in the total amount of $9,240 to Marion pursuant to the court order dated September 30, 1974, and subsequent amending orders. At that time, William and Marion were separated but not divorced. Further, they did not file a joint return for 1975. Clearly, therefore, under section 71(a)(3) Marion must include these payments in her gross income. Consequently, William may deduct these payments under section 215. [2]/ *394 William also paid Marion's medical expenses in 1975 in the amount of $2,096 pursuant to the September 30, 1974, court order which specifically made him responsible for all medical expenses incurred by Marion and their daughter. Generally, medical payments made by one spouse on behalf of the other pursuant to a court order may qualify as support payments under section 71(a). See, e.g., . Here, however, William was reimbursed by an insurance company for $1,200 of the $2,096 expended for Marion's medical expenses. Consequently, for section 71(a) purposes, William paid to Marion only the amount ($896) for which he was not reimbursed.Thus, apart from a proportionate part of the premiums for the insurance policy, Marion must include in income only $896 under section 71(a), and William may deduct the same amount under section 215. Respondent contends that the medical insurance premium of $320 paid by William to cover Marion's medical care does not qualify under section 71(a) because it was neither a medical expense nor required by the support order. Respondent distinguishes , upon *395 which William relies, because in that case the Court ordered that medical insurance be provided. It is true that here, unlike Isaacson, the court order did not specifically require William to pay for medical insurance. Nevertheless, the court required William to provide for Marion's medical expenses, and the court specifically directed Marion to cooperate with William to the extent necessary to obtain reimbursement by insurance. Consequently, William's payment of the insurance premium was merely his method of providing Marion's medical support required by the court order. As such, the amount of the cost of the premium is included in Marion's income under section 71(a) and is deductible by William under section 215. Of course, William may not, in addition, deduct the premium as a medical expense under section 213. [3]/ *396 Issue 2. Rental Proceeds
Through April 1975, the apartment house owned by Marion and William as tenants by the entireties generated $555 per month in gross rent. During the remainder of the year, the gross rent was raised to $595 per month. Marion received all of the rents for 1975, totaling $6,980. While she failed to report any of these proceeds as income, William reported the entire amount as income in 1975. In Pennsylvania, a tenancy by the entirety is an estate pertoutetnonpermy (by the whole and not by the half). . Each spouse is seised of the whole of the property rather than any divisible part. Where the tenants file separate income tax returns, each must report one-half of the proceeds of the property in his income. ; . Thus, without regard to the various support decrees here in issue, Marion and William each would have been required to include one-half ($3,490) of the rent in their respective incomes. Further, each spouse would *397 be entitled to one-half the depreciation deduction for the property. William contends that his share of the rental proceeds, which was retained by Marion, qualifies as support payments under section 215. He argues that the September 30, 1974, court order incorporated the official court transcript of the February 19, 1974, hearing, containing the agreement between Marion and William that Marion would be entitled to all of the proceeds from the property. While it is true that the September 30, 1974, court order for support did not mention Marion's collection of the rents from the apartment house, the order was amended nuncprotunc by the orders of October 19 and 27, 1976. All three of these orders were signed by the same judge. The amendment specifically provided that "William Lebeau shall, in addition to permitting Marion B. Lebeau to receive and keep for her own use the net rentals" from the apartment house, make the specified monthly cash payments to Marion. The September 30, 1974, order as thus amended meets the requirements of section 71(a)(3), quoted above. The rental income is includable in Marion's income, and William is entitled to a section 215 deduction *398 in an amount equal to his one-half of the rents, offsetting the inclusion of that amount in his income. [4]/ We do not question the correctness of respondent's position that "nuncprotunc orders are not effective to establish a legal obligation created retroactively for purposes of section 71(a)." See , affg. ; cf. , affg. . "There must be in effect an enforceable obligation when an alimony payment is made to make such a payment deductible." . But that rule does not support respondent's position here. In the instant case, in late 1973 Marion filed an action in the Court of Common Pleas seeking support payments for herself and her daughter. After some testimony, the parties in open court announced on February 19, 1974, among *399 other things, that they had reached an agreement which included the following: Mrs. Lebeau will continue, as in the past, to collect rentals from the * * * [apartment house] which total $555, and that Dr. Lebeau is to supplement Mrs. Lebeau's income and to provide her with sufficient income for the next several months pending this hearing. He will pay her the difference between the $555 that she is collecting from the * * * [apartment house] and the sum of $1,779 which was requested in * * * [her] petition. Upon the announcement of this agreement, the court continued the hearing. Thereafter, Marion continued to receive the rents from the apartment house along with William's monthly payments. There was no dispute between the parties as to the rents. It is stipulated in the instant case that Marion received $6,400 in rents for 1975. William became delinquent in his monthly payments, and Marion filed the action to enforce the settlement agreement. Her petition alleged that the settlement made between the parties "provided, interalia," for the monthly payments. The petition made no reference to the rents from the apartment hosue apparently because her right to *400 the rents was not disputed. The court then entered its order "to show cause why the terms of the settlement agreement should not be enforced." On September 30, 1974, the court entered its order for support which restated prospectively the parties' agreement for monthly payments. The order provided for William to liquidate his delinquencies, dealt with certain previously-incurred expenses, and obligated William to pay the real estate taxes on their jointly-owned property. The parties have stipulated that this order was "based upon the hearing and agreement made in open court" on February 19, 1974. The order, we infer, contained no provision about the apartment house rents because there was no dispute between the parties on that subject. There is no suggestion of any intention to change the arrangements with respect to the rents. The orders of October 19 and 27, 1976, retroactively amended the September 30, 1974, support order "to reflect the parties' previous agreement" as outlined in the transcript of the February 19, 1974, proceeding. This amendment, consistent with the settlement agreement, expressly permitted Marion to retain the rental income from the apartment house. *401 Thus, the amendatory orders of October 19 and 27, 1976, did not retroactively create a legal obligation to allocate the rents to Marion. Her right to receive the rents as part of her support was established in the February 19, 1974, settlement agreement. The Court of Common Pleas at all times recognized the validity of that agreement as recorded in the transcript of its proceedings, and we think the court, when it made its September 30, 1974, order, intended the entire settlerment agreement to remain in effect. The amendatory orders merely clarified that the pre-existing settlement agreement which had been made in open court in February 1974 regarding the apartment house rents was incorporated in the 1974 support decree. That decree should be given effect. See ; ; ; ; .[5]/ *402 To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. / Sec. 215 provides in pertinent part: (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.↩
3. /↩ Respondent argues that the $320 paid for medical insurance was taken as an itemized deduction on William's return and, consequently, is not allowable as part of the alimony deduction. William's 1975 return shows a substantial deduction for medical care insurance, but our study of the record indicates to us that the $320 claimed as alimony was not included in that itemized deduction.
4. /↩ The Sept. 21, 1975, effective date, as we interpret the Oct. 19 and 27, 1976, orders, refer to the reduction of the cash payments, not to the rents.
5. /↩ Respondent makes the technical argument that the settlement agreement as recorded in the transcript to the Feb. 19, 1974, proceeding of the Court of Common Pleas was not a "written" agreement and therefore sec. 71(a)(2) does not cover the apartment house rental payments, citing ; but see , revg. ; . Having concluded that sec. 71(a)(3) applies, we do not reach that argument.